**FILED**
**May 24, 2023**
**08:00 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **SHEAKENIA BROWN,** | ) | **Docket No.: 2022-08-1105** |
| **Employee,** | ) | |
| **v.** | ) | |
| **RED ROOF INN,** | ) | **State File No.: 69254-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| **TRAVELERS CASUALTY,** | ) | **Judge Thomas Wyatt** |
| **Carrier.** | ) | |

### EXPEDITED HEARING ORDER
### *(DECISION ON THE RECORD)*

---

Sheakenia Brown requested an expedited hearing based on a review of the record. Red Roof Inn agreed. The issues were whether Ms. Brown will likely prevail at a hearing on the merits in proving that she suffered injury in a fall at work and that her alleged injury arose primarily out of and in the course and scope of employment. For the reasons below, the Court denies Ms. Brown's claim at this time.

### History of Claim

*Procedural History*

Ms. Brown seeks benefits for spine, leg, and head injuries that allegedly occurred when she slipped and fell in water on September 18, 2022. Red Roof initially paid medical benefits but denied the claim after receiving statements from coworkers that Ms. Brown staged the fall and was not injured as she claimed.

Ms. Brown filed her own affidavit and supporting medical records. A Docketing Notice set a schedule by which the parties could submit evidence and file position statements and objections. Red Roof filed affidavits of its manager and three employees in support of its position.

Ms. Brown then moved to file transcripts of recorded statements given by her and

1

four Red Roof coworkers, three of whom gave affidavits already filed by Red Roof. Red Roof objected, arguing that the transcripts were filed too late, and that Ms. Brown did not show that the transcripts were accurate. The transcripts of Ms. Brown and the three affiants were admitted but only as rebuttal evidence to their affidavits.[1] Neither party objected to other evidence in the record.

*Factual History*

Ms. Brown worked as a housekeeper for Red Roof for approximately ten months before the date of the alleged injury. She received wages plus free lodging for compensation.

Ms. Brown stated that on the day of her injury she went to the laundry room. She noticed that two coworkers were pushing water out of the room. The water had spilled from a broken wash machine. She alleged that she began loading her cart and, after the co-workers left, she slipped in water that remained where she parked her cart.

Ms. Brown stated she fell backward and hit her head on the floor, leaving her momentarily unconscious. When she awoke, she became aware of head, side, back, and leg pain. She asked a coworker to call an ambulance. Ms. Brown's manager, Andy Patel, came to the scene as she lay on a stretcher.

Ms. Brown's coworkers Natasha Lytle, Sandra Robinson, and Chandra Shaw confirmed that a wash machine had broken and spilled water on the floor on the morning Ms. Brown allegedly fell. However, they claimed that Ms. Shaw and another coworker swept all the water out of the room and dried the floor before Ms. Brown's alleged fall.

Ms. Lytle testified that she was cleaning near the laundry room when she heard Ms. Brown call her name. She found Ms. Brown lying on the floor near her cart. She said just a little water was on the floor where Ms. Brown "supposedly" fell and added, "it didn't look right."

Ms. Robinson also testified that she saw Ms. Brown on the floor. She said "some water" was on the floor where Ms. Brown lay and speculated it may have come from Ms. Brown's mop bucket, which was empty. Ms. Robinson claimed that Ms. Brown texted her photographs of water on the floor before the alleged fall and that Ms. Brown had said she "would get money from Andy."[2]

Ms. Shaw said that after hearing Ms. Brown had fallen, she went to the laundry

---

[1] A review of the transcripts revealed no material discrepancies with the declarants' affidavits.
[2] The record does not contain those photographs or confirmation from the parties' phones that photos were taken and sent as Ms. Robinson claimed.

room and saw Ms. Brown on the floor. She noticed water where Ms. Brown fell and believed it had come from Ms. Brown's mop bucket, which was empty. She stated the water did not come from the wash machine because she and a coworker had removed all the water before Ms. Brown fell. She claimed that Ms. Brown stated after she fell that she was "going to get my money."

The ambulance crew who treated Ms. Brown noted that she reported slipping in water and hitting her head. They did not record any back pain and wrote that she rose from the floor with little or no help before lying down on a stretcher. They transported Ms. Brown to the hospital.

Hospital staff recorded that Ms. Brown reported falling and hitting her head when she slipped in water. They noted that she said she was "out" momentarily but did not completely lose consciousness. A brain CT scan and lumbar spine x-rays revealed no injuries. The staff diagnosed Ms. Brown with head, back, and pelvic bruises, prescribed pain medication, and said she could return to work in a week without restrictions.

A few weeks later, Ms. Brown attended two authorized visits at a clinic. She told providers that she fell at work and primarily reported back pain. They diagnosed a low back strain and sciatic nerve injury and placed work restrictions.

Ms. Brown claimed that Mr. Patel became irate when she filed her workers' compensation claim and told her he would not let her return to work unless she dropped it. She also stated that he told her she could not return to work until she was released without restrictions, and she would have to vacate her room.

Mr. Patel denied that he told Ms. Brown she had to drop her claim to return to work. On the contrary, he gave her two to three weeks to see if she could get a full release to return to work. However, he admitted telling Ms. Brown to leave her room because she was not working and was rude to her coworkers.

Red Roof denied Ms. Brown's claim on October 17. The notice claimed that Ms. Brown intentionally injured herself and/or her work activity was not the major contributing factor to her need for treatment.

## Findings of Fact and Conclusions of Law

To recover benefits, an employee must prove that she suffered an injury by accident that arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(12) (2022). Proof of causation of the injury requires medical expert testimony, based on a reasonable degree of medical certainty, that the employment contributed more than fifty percent to the cause of the employee's alleged injury, disability, and/or need for treatment, considering all causes. *Id*.

3

The employee has the burden of proving all elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At an Expedited Hearing, the employee must show that she will likely prevail at a hearing on the merits in proving the essential elements of the claim. Tenn. Code Ann. § 50-6-239(d)(1).

The Court holds that Ms. Brown failed to carry her burden of proving she will likely prevail at trial in her claim for benefits. Ms. Brown alleged that she slipped and fell on spilled water from a broken wash machine. However, nobody saw her fall. Her coworkers said they dried the floor before she fell and raised the possibility that Ms. Brown staged the fall to fulfill her alleged previous promise to "get money from [Red Roof's manager] Andy."

The record here creates a classic "swearing match" as to a critical issue—whether the laundry room floor was dry when Ms. Brown allegedly fell. In *Secrest v. Haynes,* 2003 Tenn. App. LEXIS 208, at *14-15 (Tenn. Ct. App. 2003), the Court of Appeals provided two "weapons" available to a trial court to assess contradictory testimony. First, the court can consider whether the testimony of a witness has "internal inconsistencies" that erode confidence in its accuracy. Second, the Court can consider whether testimony aligns with physical and documentary evidence in the record.

Here, the testimony consists of affidavits and recorded statements that were not tested by cross-examination. As a result, the Court did not have sufficient opportunity to address the evidence as described above. On this record, the Court cannot hold that Ms. Brown will likely prevail at a hearing on the merits in proving that she was injured as she said.

The Court also holds that Ms. Brown failed to carry her burden of proving causation. While the medical documentation contains Ms. Brown's history of a fall and certain diagnoses, it does not give a medical opinion that her diagnoses arose primarily due to her alleged fall. A record's mere recital of the employee's history of injury along with the doctor's diagnoses does not, standing alone, prove that the diagnosed conditions arose primarily out of and in the course and scope of employment.

To receive benefits, Ms. Brown must provide specific medical expert testimony that her alleged fall contributed more than fifty percent to the causation of the conditions that allegedly disable her and require treatment. That requisite evidence does not exist in this record.

**IT IS, THEREFORE, ORDERED** as follows:

1. At this time, the Court denies the relief sought by Sheakenia Brown.

2. This case is set for a Status Hearing on **August 25, 2023**, **2020**, **at 9:00 a.m. Central Time/10:00 a.m. Eastern Time**. The parties must call (615) 741-3061 or toll-free at (855) 747-1721 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED May 24, 2023.**

*Thomas Wyatt*

_____
**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Sheakenia Brown
2. Affidavit of Sandra Robinson
3. Affidavit of Natasha Lytle
4. Affidavit of Chandra Shaw
5. Affidavit of Andy Patel
6. Transcript of recorded statement of Sheakenia Brown
7. Transcript of recorded statement of Sandra Robinson
8. Transcript of recorded statement of Natasha Lytle
9. Transcript of recorded statement of Chandra Shaw
10. Wage Statement
11. Collective medical records and bills
    - Memphis Emergency Services
    - Methodist South Healthcare
    - Concentra Medical Center

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Show Cause Order
4. Docketing Notice—Show Cause Hearing
5. Employee's Motion for an Enlargement of Time to Request Expedited Hearing
6. Red Roof's Response to Motion for an Enlargement of Time
7. Order extending Ms. Brown's time to request Expedited Hearing
8. Employee's Motion Requesting Expedited Hearing (Decision on the Record)
9. Red Roof's Response to Request for Expedited Hearing
10. Docketing Notice for on the Record Determination
11. Employee's Motion for Enlargement of Time to File Additional Records for Consideration in Expedited Hearing
12. Red Roof's Response to Motion for Enlargement of Time
13. Red Roof's Motion in Limine
14. Employee's Response (to Motion in Limine)
15. Red Roof's Expedited Hearing Brief
16. Order (Motion for Enlargement of Time and Motion in Limine)
17. Red Roof's Supplemental Expedited Hearing Pre-Trial Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on May 24, 2023.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Femi Salu<br>Employee's Attorney | | X | salu@salulawfirm.com |
| Paul Nicks<br>Employer's Attorney | | X | pnicks@travelers.com |

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____          2. Address: _____

3. Telephone Number: _____          4. Date of Birth: _____

5. Names and Ages of All Dependents:

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation $ _____ per month     Child Support $ _____ per month

Car     $_____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe:_____

11. My debts are:

Amount Owed            To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____